UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
AVALON RISK MANAGEMENT                                    :
INSURANCE AGENCY, L.L.C.,                                 :
                                        Plaintiff,        :          12 Civ. 3934 (LGS)
                                                          :
                    -against-                             :          **OPINION AND ORDER**
                                                          :
GREGORY TAYLOR, et al.,                                   :
                                        Defendants.       :
                                                          :
----------------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: _09/16/2015_ |

LORNA G. SCHOFIELD, District Judge:

        This action arises out of allegations that Defendant James Rossano -- while employed by

Plaintiff Avalon Risk Management Insurance Agency, L.L.C. ("Avalon") -- engaged in a scheme

that fraudulently diverted business away from Avalon using Avalon's contacts and resources.

Plaintiff alleges, inter alia, claims of (1) misappropriation, (2) tortious interference with business

relationship, (3) fraud, (4) conspiracy and (5) conversion.  Plaintiff moves for summary

judgment on its claims for misappropriation, fraud and conversion against Rossano -- the only

remaining defendant in this action.  For the following reasons, Plaintiff's motion is granted as to

its fraud claim and otherwise denied.

**LEGAL STANDARD**

**I.      SUMMARY JUDGMENT**

        The standard for summary judgment is well established.  Summary judgment is

appropriate where the record before the court establishes that there is no "genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the

summary judgment motion and identifying those portions of the record that demonstrate the

absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165

(2d Cir. 2002).  Courts must construe the evidence in the light most favorable to the non-moving

party and draw all reasonable inferences in the non-moving party's favor.  *See Young v. United

Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d

76, 87 (2d Cir. 2008).  "Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment."  *Liberty Lobby*, 477

U.S at 248.

## II.   RULE 56.1 STATEMENTS

Local Civil Rule 56.1 requires parties moving for summary judgment to "annex[] to the

notice of motion a separate, short and concise statement, in numbered paragraphs, of the material

facts as to which the moving party contends there is no genuine issue to be tried."  Local Civil

Rule 56.1(a).  Such statements are commonly known as "Rule 56.1 Statements."  Parties

opposing summary judgment must file responses to Rule 56.1 Statements that include

"correspondingly numbered paragraph[s] responding to each numbered paragraph in the

statement of the moving party, and if necessary, additional paragraphs containing a separate,

short and concise statement of additional material facts as to which it is contended that there

exists a genuine issue to be tried."  Local Civil Rule 56.1(b).  Each numbered paragraph that the

movant states in a Rule 56.1 Statement "will be deemed to be admitted for purposes of the

motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Civil Rule 56.1(c).  Rule 56.1 further requires that every "statement by the movant or opponent pursuant to Rule 56.1[] . . . be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Civil Rule 56.1(d).

"A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.  In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met."  *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citation omitted); *accord N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) ("We have previously recognized that district courts have the authority to institute local rules governing summary judgment submissions and have affirmed summary judgment rulings that enforce such rules."  (citations omitted)); *Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000) (per curiam) (affirming grant of "summary judgment in favor of defendants following [plaintiff's] failure to deny, in accordance with Rule 56.1 of the court's local rules, defendants' allegations").  Any paragraphs set forth by a movant in a Rule 56.1 Statement that the non-moving party does not specifically deny with citations to supporting evidence are therefore deemed admitted for purposes of a summary judgment motion.  *Ezagui v. City of New York*, 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010); *accord Wenzhou Wanli Food Co. v. Hop Chong Trading Co., Inc.*, No. 84191, 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000) ("Unsupported allegations will not suffice to create a material issue of fact . . . . Rather, the party opposing the motion must produce sufficient evidence to

permit a reasonable jury to return a verdict in its favor . . . ." (citing *Trans Sport, Inc. v. Starter Sportswear*, 964 F.2d 186, 188 (2d Cir. 1992)).

**<u>BACKGROUND</u>**

Unless otherwise noted, the facts below are taken from Plaintiff's Rule 56.1 Statement and submissions to the Court.  Defendant filed responses to each paragraph in Plaintiff's Rule 56.1 Statement but failed to support any of the denials with citations to the record.  Accordingly, the averments in Plaintiff's Rule 56.1 Statement are deemed admitted for purposes of Plaintiff's summary judgment motion.  *See T.Y.*, 584 F.3d at 418; *Ezagui*, 726 F. Supp. 2d at 285 n.8.  All averments from Plaintiff's Rule 56.1 Statement that are relied upon herein are supported by the record.

Plaintiff is an insurance agent that provides insurance and surety products to the international trade and transportation community.  The Amended Complaint states that Plaintiff is "a company organized under the laws of the state of Connecticut having its principal place of business in Elk Grove Village, Illinois, and maintaining an office in New York, New York." Plaintiff "operates in a competitive niche market in a highly regulated industry," in which "surety bonds are subject to strict underwriting protocols as well as regulatory controls." Plaintiff receives commissions and fees for placing surety bonds and collecting premiums from its customers.

Defendant was recruited to work for Avalon by his cousin Phil DiChiara, who served as Avalon's Divisional Vice President.  During Defendant's ten years as an Avalon employee, his responsibilities including writing and placing surety bonds with federal agencies, including the United States Federal Maritime Commission and United States Customs and Border Protection. According to the Amended Complaint, Defendant was employed in Plaintiff's New York office.

4

While he was employed by Avalon, Defendant created a fictitious entity called Worldwide Consulting ("Worldwide").  Defendant -- operating as Worldwide and using Plaintiff's contacts -- communicated with Avalon's current and prospective clients and offered to write bonds on their behalf, naming Plaintiff as the agent for the surety.  Defendant made up the name "Greg Taylor," the name of a former colleague, to use when he was acting on behalf of Worldwide when dealing with Avalon clients.  Without following Plaintiff's underwriting guidelines and procedures or obtaining Plaintiff's approval, Defendant had the sureties with whom Plaintiff worked issue the surety bonds, listing Plaintiff -- not Worldwide -- as agent. Defendant then placed the bonds with the Federal Maritime Commission.  When the bonds came up for annual renewal, the bonds were renewed again without the underwriting procedures that Plaintiff normally would undertake.

Even though he was a full-time Avalon employee, Defendant engaged in these activities on behalf of Worldwide using Plaintiff's customer lists, forms, computer equipment, systems, phones and relationships with sureties without Plaintiff's knowledge or consent.

Defendant entered the bonds in Plaintiff's billing system in ways such that Avalon would not detect them.  Defendant collected excessive premiums on the bonds, which he kept for himself rather than paying them over to Plaintiff and its surety.  In one case, for example, Plaintiff paid premiums of $6,000 due to the surety that Plaintiff had not received from the customer.  In addition, Plaintiff is owed over $20,000 of commissions that it never received for the bonds that Defendant purported to place through Worldwide, according to a spreadsheet submitted in support of the motion.  Even though Plaintiff did not receive most of the premiums, Plaintiff is potentially liable for claims up to $2.475 million on the bonds.  Actual claims total $602,938.21.  Because the bonds list Avalon as agent, these claims negatively impact Avalon's

rating with its surety and affect Avalon's business reputation, according to Michael Brown, Avalon's Executive Vice President.

Sosua Shipping, Inc. ("Sosua") was one of several customers of Worldwide whose bonds were placed by Defendant through Avalon.  In March 2007, Dianelly Rivas -- Sosua's Manager -- contacted DiChiara concerning the possibility of Avalon placing a bond with the Federal Maritime Commission.  DiChiara told Rivas that Sosua did not qualify for bond placement through Avalon and referred Rivas to Worldwide, which -- according to DiChiara -- could place the bond for Sosua.  On March 15, 2007, a man identifying himself as "Greg Taylor" called Rivas and told her that he was a Worldwide employee who had received her contact information from DiChiara.  "Taylor" quoted the bond premium as $7,500, which Sosua then paid to Worldwide.  Defendant placed the $75,000 bond with Avalon's surety without being subject to the underwriting safeguards that Avalon normally applies, and on March 21, 2007, "Taylor" communicated to Sosua that the bond was in effect.  On at least seven occasions from February 2008 through February 2012, Sosua sent Worldwide payments totaling $23,725.00 for the placement of bonds.  Worldwide, however, did not remit any monies to Avalon for payments that Sosua made after 2008.

In his deposition, Defendant admitted to receiving money from Worldwide.  Defendant did not pay taxes on any income received from Worldwide.  He does not have any records of his Worldwide transactions.

## DISCUSSION

## I.   FRAUD

For the following reasons, Plaintiff's motion for summary judgment on its fraud claim is granted.

Under New York law, to prevail on a fraud claim based on alleged omissions, a plaintiff must prove "a duty to disclose, knowledge of the material facts by the party bound to disclose, scienter, reliance, and damage." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005); *accord Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011) (holding that, for fraud claims predicated on omissions, plaintiff must prove, "in addition to the four foregoing elements (of fraudulent misrepresentation) . . . that the defendant had a duty to disclose material information and that [he] failed to do so").

It is "well settled" under New York law that "an employee is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Am. Map Corp. v. Stone*, 694 N.Y.S.2d 704, 705 (2d Dep't 1999) (alterations omitted) (quoting *Maritime Fish Prods., Inc. v. World-Wide Fish Prods.*, 474 N.Y.S.2d 281, 285 (1st Dep't 1984)). "Not only must the employee or agent account to his principal for secret profits but he also forfeits his right to compensation for services rendered by him if he proves disloyal." *Id.* (quoting *Maritime Fish*, 474 N.Y.S.2d at 281).

Here, Plaintiff has adduced evidence that Defendant made material omissions of fact when he was employed full-time by Avalon to place surety bonds on its behalf, but in fact was placing bonds for his own benefit, without complying with Avalon's underwriting procedures, hiding the existence of the bonds from Avalon and collecting premiums for himself, while leaving Avalon exposed to the risk of claims. Plaintiff's evidence also shows that Defendant acted with an intent to induce Avalon's reliance -- specifically, to ensure that the bonds he had written as Worldwide would be placed with Avalon's surety without interference from Avalon. The record also contains ample evidence -- including Rossano's use of a fictitious entity

"Worldwide," his use of the pseudonym "Greg Taylor" while negotiating Worldwide bonds, and his hiding the existence of the bonds from Avalon -- that Defendant knew that his acts and omissions were misleading. The record shows reliance in that Avalon did not know about or consent to the issuance of bonds placed by Defendant and Worldwide listing Avalon as agent. Plaintiff has been injured in that (i) Defendant took for himself commissions due to Avalon; (ii) Avalon paid premiums due to sureties that it never collected from customers; (iii) Avalon is potentially liable for claims up to $2.475 million on the bonds, and actual claims have been filed for over $600,000; (iv) the extent of claims affect Avalon's rating with its surety and its business reputation.

Because no reasonable jury could find for Defendant on these facts, Plaintiff is entitled to summary judgment on its common law fraud claim against Defendant.[1]

## II.     MISAPPROPRIATION

The Amended Complaint alleges misappropriation of "proprietary information," specifically "customer lists and client billing information." Under New York law, the relevant

---

[1]     The Amended Complaint alleges a different theory of fraud than the theory described here. Specifically, the Amended Complaint avers that Defendant made material misrepresentations to entities requesting bonds, representing that he was acting on behalf of or with the authorization of Plaintiff and thereby inducing them to pay Defendant premiums. Plaintiff does not have standing to bring that claim. The theory discussed above, however, is a "mere variation[] of [the] previously pleaded claim[]," as it is "based on the same nucleus of operative facts and similar legal theories as the original claims." *Henry v. Metro. Transp. Auth.*, No. 07 Civ. 3561, 2014 WL 4783014, at *10 (S.D.N.Y. Sept. 25, 2014) (quoting *Coudert v. Janney Montgomery Scott, LLC*, No. 03 Civ. 324, 2005 WL 1563325, at *2 (D. Conn. July 1, 2005), *aff'd*, 171 F. App'x 881 (2d Cir. 2006)). Such a "mere variation" may be considered at the summary judgment stage, as Defendant was "clearly on notice from the complaint and [i]s not unfairly prejudiced." *Id.* (quoting *Coudert*, 2014 WL 4783014, at *3); *accord Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 89-90 (2d Cir. 2010) (summary order) (vacating part of summary judgment award dismissing retaliation claim, where complaint did not clearly articulate meritorious theory of retaliation).

claim is misappropriation of trade secrets.  The claim is denied because an issue of fact remains as to whether the information in question was confidential, as required to prevail on the claim.

Under New York law, to prove a claim of misappropriation of trade secrets, "a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (citation omitted).  "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it."  *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999) (internal quotation marks and alterations omitted).  New York courts consider the following factors in determining whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* (citations omitted).

"A customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected at the owner's instance against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable."  *Id.*  Whether a customer list constitutes a trade secret is generally a question of fact.  *See In re Cross Media Mktg. Corp.*, No. 06 Civ. 4228, 2006 WL 2337177, at *3 (S.D.N.Y. Aug. 11, 2006) (citing *Haber*, 188 F.3d at 44).

Here, the Amended Complaint alleges that Defendant utilized its "customer lists and client billing information to write bonds in the name of [its] customers and potential customers," and alleges that the lists and billing data are "confidential proprietary information." However, the record contains no evidence that the information was confidential, nor evidence of any of the other factors that would make the lists and data a trade secret. Thus, the record is insufficient to support a finding that Avalon's customer lists and client billing information constitute "trade secrets" for purposes of a misappropriation claim. *See Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 217 (S.D.N.Y. 2013) (denying summary judgment on misappropriation claim where genuine issues of fact remained as to whether prospective client list was "trade secret").

As genuine issues of material fact remain, Plaintiff's motion for summary judgment on its misappropriation claim is denied.

## III.   CONVERSION

For the following reasons, Plaintiff's motion for summary judgment on its conversion claim is denied.

To succeed on a conversion claim, a plaintiff must show that the defendant "intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to" the plaintiff, "interfering with [plaintiff's] right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006); *accord Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (noting that, to adequately plead conversion claim, plaintiff must allege "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights") (citation omitted). "Tangible personal property or

specific money must be involved." *Batsidis v. Batsidis*, 9 A.D.3d 342, 343 (N.Y. App. Div. 2d Dep't 2004) (citations omitted). "A plaintiff's right of possession may be infringed by a wrongful: (i) taking; (ii) detention; or (iii) disposal." *Corporacion Fruticola De Chincha v. Watermelon Depot, Inc.*, No. 05 Civ. 6293, 2008 WL 2986276, at *4 (S.D.N.Y. July 31, 2008) (citing *Pierpoint v. Hoyt*, 260 N.Y. 26, 29 (1932)). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, *in derogation of plaintiff's rights*." *Colavito*, 8 N.Y.3d. at 50 (emphasis added).

Here, Plaintiff alleges that Defendant utilized Avalon's customer lists and client billing information -- which the Amended Complaint describes as "confidential proprietary information" over which Plaintiff "exercise[d] legal ownership." Plaintiff alleges that, by doing so, Defendant "exercised unauthorized dominion over [Avalon's] property, to the exclusion of [Avalon's] rights." Plaintiff, however, has not produced sufficient evidence to prove that Defendant limited or otherwise deprived Avalon of possession or use of that information. *Compare Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (reversing dismissal of conversion claim, where complaint alleged that defendant took and retained possession of plaintiff's irreplaceable records) *with Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 536 (S.D.N.Y. 2011) (dismissing conversion claim where defendant only possessed copy of client list, while plaintiff remained able to access list); *see also Shmueli v. Corcoran Grp.*, 802 N.Y.S.2d 871, 876 (N.Y. Sup. Ct. 2005) (finding that "plaintiff's computerized client/investor list is convertible property" but making clear that plaintiff retains "burden to prove the existence of all the elements necessary to sustain a claim for conversion applicable in a case involving non-electronic documents and things").

As Plaintiff has failed to show that no reasonable jury could find for Defendant on this claim, Plaintiff's motion for summary judgment on its conversion claim is denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED as to its fraud claim and DENIED as to its claims for misappropriation and conversion. The Clerk of Court is respectfully directed to close the motion at Docket No. 139.

SO ORDERED.

Dated: September 16, 2015
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**
